is United States v. Marcus Jones, number 172599. May it please the court. Good morning. My name is Jeremy Gelb. I represent the appellant Marcus Jones. I would request permission to reserve three minutes. That would be great. Thank you. In this case, I'm going to address two issues, if time permits. The first issue that I raised in the brief was the 404B issue. In this case, although I don't want to elaborate an awful lot on the facts, I think some factual predicate is necessary to set up this argument. You're free to use your time as you like, but we're pretty familiar with the facts. There was the robbery of the Peralta store, the robbery of the I.S. store, the robbery of the Golden Kingdom. That's what I wanted to set out first. The issue that arose at the commencement, just before the trial, was would the government be permitted to use evidence from the I.S. pizza robbery in the trial that charged the other two robberies against Mr. Jones? The district court ruled that evidence from the I.S. They proffered two non-propensity purposes, right? Well, that's correct. They proffered two purposes, one to enhance the credibility of one of the former co-defendants who was testifying for the government, and the other on the issue of identity. This court has considered 404B evidence in a number of fairly recent decisions, and I'm not going to elaborate on the facts of those decisions. The argument here is that the general rule, of course, is that evidence of other crimes or bad acts are not admissible to prove a person's character, in order to show that on a particular occasion, the person acted in accordance with that character. Now, the contention of the appellant here is that there was no way that you could admit evidence concerning the I.S. robbery and avoid a propensity link. Because there was an abundance of evidence that was presented during the course of the trial, which told the jury that this guy was guilty of the I.S. pizza robbery. There was an abundance of evidence, but these facts are a bit unusual, where you have these three robberies, and the one in the middle, your client pleads guilty to. So, why isn't it proper for the government to say, Mr. Jones is the guy who committed the Peralta robbery. Mr. Jones is the guy who, at the pizza shop robbery, admits, and he's already admitted it because he pleaded guilty, was there in black sneakers with this distinctive yellow stripe. So, what's wrong with them saying, look, here he was at the second robbery, wearing these black sneakers with a distinctive yellow stripe, and we're offering that for the purpose of establishing who it was that committed the robbery at the grocery store. What's wrong with that? Well, what's wrong with it is that he admitted to it. Well, he did. It's a little different than if you only had a video of the pizza robbery. Yes, I agree, it would be different. And it would be a little different if you didn't have a guilty plea at the pizza robbery, and you were trying to show, here he was. But here, he admitted it. Hey, I was there. Not only was I there, not only did I commit a robbery, but I was wearing these black sneakers with a distinctive yellow stripe. Well, I think it presents the classic problem with all 404B evidence, Your Honor. It does. I think it's prejudice. What the court has said is the tendency to over-persuade the jury based upon emotional, visceral reactions. Doesn't the fact that he was acquitted of the Golden Kingdom robbery cut against the idea that the jury looked at this as propensity evidence and instead properly compartmentalized the evidence? I'm glad you asked the question. The answer is no, because there were very, very different proofs with regard to that last robbery. You may recall that the biggest piece of evidence, as far as the defense was concerned, was that several witnesses had claimed that the person who committed that last robbery was a light-skinned black male, which obviously did not fit the description for this defendant. And that was actually entered by way of stipulation, if I recall correctly. And it was something that the defense lawyer repeatedly asked other witnesses and referred to during the course of the trial. It was, frankly, a weak case. Also you have here, of course, you've got two instructions to the jury about compartmentalizing, as Judge VanAschke said. That might be a little tougher for you, I think. I grant that. The proper limiting instructions were given both at the time that the evidence was introduced as well as in the final charge. There's no question about that. And I think that there is some suggestion in the case law that that may reduce the extent of the prejudice. Of course, there are other decisions which, notwithstanding the fact that a limiting instruction has been given, that the court has nonetheless held that the propensity link is there and that the prejudice is too great to be overcome. I wanted to make one other point in anticipation of what my colleague is likely to argue. Can I ask you a question? I'm not sure if this is the same point. Did the district court do a 403 analysis? I don't believe so. And I say that. I'd like to give you a straight answer. But my answer is that while there were discussions during the course of the trial with the judge concerning the extent of the prejudice, there was never, in my judgment, a thorough analysis of the type that this court requires. So I don't think that, for example, the learned trial judge did not consider not only… I was trying to find that as well. But just the fact that the judge said we've got to limit things to where the shoes were visible versus having the gun in. I mean, doesn't that show that the judge probably tried to do some sort of 403 balancing? I think the judge was sensitive that it would be extremely prejudicial if, for example, they allowed the IS video showing the gun and the reaction of the victim. So he agreed to keep that out at the request of the defense. However, I think where the analysis falls short is I don't think the judge had a handle on the extent of the evidence that was going to be permitted from the IS case. And I also don't think that there was any analysis on the part of the court of what the other government evidence was. In this case, you have two co-conspirators who played guilty who testified against the defendant. And they said very, very damaging things. All of that should have been considered, in my judgment, in making the determination about the admissibility of the IS evidence. That is to say, if the government really didn't need all of that evidence, why let it in? What specific part… What specific 4B evidence are you objecting to? The video of the IS robbery itself. There was testimony from a police detective that he interviewed Mr. Jones upon his arrest, that he showed Mr. Jones the surveillance video of the robbery, and that after seeing that surveillance film, Mr. Jones confessed. There was the detective's testimony that clothing was taken at the time of his arrest because the detective felt that that clothing was similar to the clothing that he had previously seen in the video. And there was a great deal of testimony from the detective who… Didn't the video of the Peralta robbery also show the same clothing? That was the inference that the government wanted the jury to draw. That's correct. Except that, again, I think that's part of the danger here. Because while the government says, Well, the prosecutor never asked the jury to infer that, explicitly at least, that the defendant was the person who committed the Peralta robbery. If you look at what she said in closing, that is essentially what she said. You look at the IS videotape, you look at the Peralta videotape, guess what? He's wearing the same shoes. In fact, the co-defendant went and purchased the shoes with him. So is there any doubt in your mind, ladies and gentlemen, that the defendant was the one who committed the Peralta robbery? That just goes to identity. Proving identity. Well… It's not using propensity for that purpose, it's using person… match the description. No, I… The clothes and the footwear. But respectfully, I think it went beyond that. The limiting instruction was that the evidence concerning clothing was limited to identity. That it was supposed to be admitted for a limited purpose. Not to show propensity on the part of the defendant, but for the jury to consider the clothing. I believe that in the closing remarks of the prosecutor, if you look at them, it went well beyond that. And I think that was, again, part of the prejudice here. That this case never got beyond the propensity length that was implicit in the evidence, and there was never a sufficient balancing under Rule 403. Right. So in your view, this is a needlessly cumulative case? Yes, that's correct. Anything more, counsel? I think that I'll sit back and use my rebuttal time. Thank you. Okay. Thank you, counsel. Good morning or afternoon, whatever the other term. Robert Zalzman on behalf of the government. Your Honor, first of all, there was a balancing that was done by the district court. If you look at page 20 of the government supplemental appendix, the court expressly stated that it balanced and it found that the prejudicial impact did not substantially outweigh the probative value. This court, of course, has not required a lengthy exegesis, but it wants to see that the court has made the determination which it did. And then this court reviews for abuse of discretion. Your Honor, this was a pretty textbook example of the proper introduction of 404B evidence in our view. What Mr. Gallo says is absolutely correct, that you cannot introduce 404B evidence to show propensity. But what this court has made clear in numerous opinions is that what Rule 404B prohibits is evidence that only shows propensity. He's right. One could get up in court and use this evidence that Jones committed one robbery and then committed another and infer propensity from it. That's true of any 404B evidence that's ever been admitted. What's important is there needs to be another purpose that is not propensity. There can't be any reasoning in the chain of reasoning that relies on propensity. And then at that point, this court permits and encourages the introduction of 404B evidence. And the one key requirement is that the district court has to instruct the jury, whatever propensity inference is out there that a reasonable person could draw from the same guy doing the same thing twice, you can't rely on that. You have to ignore that. And, of course, you have the jury being instructed by the judge. But can you get to his point of, I mean, he brings up a point about sort of the needlessly cumulative. That was a lot. I think the jury got it. And they got to beat over the head with it. They did this Aya's Pizza robbery. How do you respond to that? Well, first of all, it falls into two categories of the evidence that was presented. First was a confession that Mr. Jones admitted he did the Aya's robbery. And the rest of that was a lie. Why is the confession to the Aya, to the pizza robbery, relevant in the trial of the grocery store robber? So it's not so much a confession of the robbery. What it's a confession of, in the context of this trial, is that that person you see in those photos and videos, wearing those clothes and those shoes, is me. That's the confession that's important here. But, again, it does not show propensity to commit robbery. It shows he is the person who owns these clothes and these shoes. And so the evidence, going back to Judge Chavarri's question, the evidence that was admitted is simply that's me, and then a whole bunch of pictures and videos showing what can be then matched up against the Peralta robbery. This is just classic identity evidence that was very effective. And it was very necessary. I think to anticipate your next question, why did you need to do this at all? And then Mr. Gallup says, you know, this is all we're trying to show is these two robberies. But he also, my friend correctly points out, this wasn't a slam-dunk case as reflected by the jury's verdict. And the jury, a couple things. The jury perhaps got it right, but more importantly, they were not swayed by any propensity evidence. They did what the judge told them to do, which was look at the evidence and decide for each count whether the person is guilty. Getting back to the needlessly cumulative question, why was it necessary to show the videos of the Aya Pizza robbery as opposed to a screenshot, you know, a simple screenshot that depicted his clothing and his footwear? Well, I'm not sure that objection was stated in that manner, but addressing it here, I don't think it added any cumulative prejudice at all. The detective said this is how he set up the comparison. He thought it important actually to put on the shoes himself and show the shoes from the same video camera because he said colors can appear differently on the camera. And so the prosecutor's assessment was that she had the evidence available to her and that he had the evidence available to him. And that it was important to lay it out in front of the jury. The judge never found in any manner that this was excessive. And I can't imagine why a photo as opposed to a video of this type of evidence, which is not inflammatory in any way, would be a problem. The problem that the government did have, as my friend Mr. Goff says, is that for the Golden Kingdom robbery, there was a stipulation that one of the victims said that it was a light-skinned African-American male. And so this made this 440 evidence, at least as to the Peralta robbery, very, very important and appropriate. Because for the Golden Kingdom robbery, they didn't have any photos or video. They didn't get a picture of his feet to see if he was wearing the same shoes. So for the Peralta robbery, a properly instructed jury is not going to rely on propensity. They want to see evidence that this is the same person. And so here the evidence is important, number one, to show identity, but also, number two, as the court instructed the jury, to bolster the corroborate, the credibility of the cooperator, Mr. Brown, which this court has many times said is a proper purpose of 440 evidence. It's Brown who said, he told me he committed the Ayers robbery. I was with him when he bought the shoes. Those are his shoes. That's him. And I was with him. I was the gateway driver when we did the Peralta robbery. This is all, again, as I said, in my view, I suggest a textbook example of 440 evidence that shows appropriate things that the government needs to prove that is not unduly prejudicial and that the court controls any prejudice with the exact instruction approved by this court, given not once but twice during the course of the trial. What about the opinion evidence? What about Officer Wilson's opinion evidence? So you have to break that down. Officer, Detective Wilson strayed a couple times and was on the verge of giving an opinion testimony and was pulled back by the prosecutor. The most important thing that happened, once again, was the cautionary instruction by the judge. At first, Detective Wilson says the clothes have similar holes. There was no objection to that. He explains why he did this video comparison to look at the colors. There's no objection to that. And then he says the color, in my opinion, was spot on. And the prosecutor immediately says, I don't want to know what your opinion is. Just tell me about how you weighed these pictures side by side. But the key is the court, as we quote in our brief, then gives this very clear cautionary instruction to the jury and says, this is a comparison. It's not up to him. It's up to you. And you're the ones who have to make the decision. So at that point, I don't think there's any error. There's one large stray line on page 606 of the supplemental appendix where the detective says the defendant's walking through the scene. Now, it's in the middle of a supplemental garbled paragraph. It's one phrase. I'm not sure a reasonable jury would even plot that out. To the extent they do, of course they may know that this detective thinks this is the guy who did it. And he's really not giving any opinion beyond that. But again, you have this very clear instruction from the judge. So even if that is the slightest error, it is certainly eliminated by the judge's cautionary instruction that he gives. Did you preserve the harmless error argument if we disagree with you on the error question? We did not argue harmless error with respect to all of these issues in general. Because as I've said, this is not a slam-dunk case, certainly with the acquittal on the Golden Kingdom robbery. If you were to plot these piece by piece, line by line, for example, only finding the error with regard to that one phrase I said, then I think we do suggest harmless error in our presentation to this court. If this court were to find that this was just riddled with lawyer opinion, sort of like the Fulton case was, which is a different case, then no, we have not argued harmless error. Well, again, plucking it apart, I mean, there's the other statement and also the 404B. I mean, 404B, assume we don't agree with you. Have you preserved a harmless error argument with respect to that argument, and what would it be? We would not suggest a harmless error if there was an error. But this court would have to find that the district court abused its discretion. I assume we did. Sure. And we're not arguing harmless error. But the evidence was... You're saying it could be a reversal, then, if we... Right. Well, it's sort of a two-edged sword. I am saying that this evidence was very important, this 404B evidence. It showed identity. It showed it corroborated Brown's credibility. So I'm not going to stand before this court and then say, oh, and by the way, it's harmless. I mean, this was appropriate significance, 404B evidence. Unless the court has further questions, I'll rest on the briefs. Okay.  Just very briefly, if I may. Yes, of course. Thank you. I found the passage that I was alluding to but couldn't find earlier with regard to the prosecutor's closing. It is Supplemental Appendix 742. It actually begins on 741. So if the prosecutor were arguing in conformity with the limiting instruction, I suspect she would not be saying, quote, and when he's arrested, ladies and gentlemen, when he's arrested on April 10th, he's wearing these shoes. These are the shoes he was wearing. You saw the video from the ayahs. These are the shoes. And she says, ladies and gentlemen, it's the same shoe. It's the shoe that Malik Brown was with the defendant when he purchased them at Players on Woodland Avenue, and he said those are the shoes he was wearing. There is no doubt that these are the defendant's shoes. So I would submit that that goes well beyond the limiting instruction. That was my point earlier. Secondly, very, very briefly with regard to the second issue, which I did not argue but I briefed. I felt that it was significant, and this is why I highlighted it in the brief, that the detective, who was not being called as an expert, purports to testify pursuant to 701, and yet is allowed to say things like, in my mind, the color is spot on, which is what he said about the shoes. That's not for him to decide. That's for the jury to decide. Didn't the prosecutor, Fairness, come back? You picked that up. There were a couple of discussions inside the bar. I think the prosecutor was trying to rein the witness in. I don't fault her for what she did, but I do fault that there was an improper use of this witness in the sense that his testimony was not properly limited, especially with regard to the second prong of Rule 701, that the testimony is limited to being helpful to clearly understanding the witness's testimony or to determining a fact and issue. And there are, for certain cases that I believe are cited in Fulton, which say, essentially, if the witness is doing the jury's job, that's not proper. And in this case, I think that he crossed the line. And I'll leave it there. Thank you, counsel. Thank you. Thank you very much. We'll take a case under advisement. Thank counsel for their excellent arguments and briefing. And if we go off the record, we'd like to shake hands.